UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA WEIGEL,

       Plaintiff,                             Civil Action No.
                                                      05-CV-74677-DT

vs.

                                                      HON. BERNARD A. FRIEDMAN

DAVITA, INC. and
TOTAL RENAL CARE, INC.,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the court on defendants' motion for summary judgment. Plaintiff has filed a response brief and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide this motion without oral argument.

Plaintiff Barbara Weigel was employed by defendants as a social worker at one of their dialysis treatment centers from October 2003 until she was discharged in August 2005. Plaintiff asserts two claims under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), 37 M.C.L. §§ 1101, *et seq*. The first is that defendants discharged her "because of a handicap." Amended Complaint ¶ 17. The second is that defendants denied her requests for accommodations. *Id.* ¶¶ 21-25. For relief, plaintiff seeks damages, interest, costs and attorney fees.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set forth specific facts showing that there

is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party.  *See Anderson*, 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

Defendants seek summary judgment as to the first claim on the grounds that plaintiff does not have a "disability," as that term is defined by the statute, and that she has failed to produce evidence showing that their decision to discharge her was motivated, even in part, by an intent to discriminate against her because of her medical condition (scoliosis).  The court agrees.

To state a prima facie case under the PWDCRA, "a plaintiff must show that (1) he is 'disabled' as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute." *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 473 (1999). If plaintiff states a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the action in question. *See Peden v. City of Detroit*, 470 Mich. 195, 205 (2004).

Plaintiff has failed to state a prima facie case because she acknowledged at her

deposition that her medical condition and her medical appointments interfered with her job performance and made regular, on-time attendance impossible. *See* Dfts' Exhibit A, p. 68 ("my disability was progressing at that point [and] that did have an impact on my attendance"); p. 69 ("I had a number of medical appointments that did cause frequent absences"); pp. 76-77 (asked to comment on the accuracy of her supervisor's criticism that "[t]his pattern of excessive tardiness and unscheduled day offs [six] have been ongoing for several months," plaintiff testified she "would not dispute it"); p. 85 ("I was receiving a lot of treatments and medical appointments that did interfere"); p. 143 ("I was able to do my job but I was clearly impaired" and acknowledging that her "paperwork was not up-to-date"); p. 143 ("Attendance-wise it [medical condition] affected it [ability to work]"); Dfts' Exhibit N ("I have had extreme medical issues that have interfered [with] my ability to work reliably"). The statute defines "disability" as a "physical or mental characteristic" that "substantially limits 1 or more of the major life activities of that individual *and is unrelated to the individual's ability to perform the duties of a particular job* . . ." M.C.L. § 37.1103(d)(i)(A) (emphasis added). Given plaintiff's admission that her medical condition interfered with her ability to appear for work on time and to complete her paperwork, she does not meet the statutory definition. This undercuts the first and second prongs of a prima facie case.

Even if plaintiff had stated a prima facie case, she has not produced evidence from which a jury could conclude that the articulated reasons for her discharge were untrue or otherwise pretextual. The articulated reasons, as set forth in plaintiff's supervisor's letter of August 11, 2005 (Dfts' Exhibit W), are that plaintiff had a history of both attendance and performance problems. These problems were regularly documented beginning in January 2005. *See* Dfts' Exhibits M, N, O, Q. In particular, these performance reviews and an audit in early August 2005 revealed an

3

egregious failure by plaintiff to complete various forms and to prepare various reports which were, as she acknowledged, required both by her employer and by regulatory agencies. The audit found that of plaintiff's 85 patient files, 95% had no yearly patient authorization and financial forms, and 95% had no quarterly psychosocial assessments. Five of the files contained no initial assessments. *See* Dfts' Exhibit W. Plaintiff's supervisor, who conducted the audit, testified at her deposition that "very few things were done on time and as required. . . . She had absolutely no follow-through, no – none of the required documentation was there that would have definitely been required if the state came in and is definitely required per policy and procedure and is certainly outlined as the social worker's responsibility. None of it was done." Dfts' Exhibit B, pp. 52-53. The supervisor also testified: "[T]here were just tons and tons of patients' confidential information on the floor, in bags, piled on her desk, piled in the corners. It actually was pretty scary when you consider this information had like all of the patients' information, Social Security, health records. And we went through a lot of this trying to see if perhaps that's where all this missing information was, and we didn't find it there, either. It was still at that point just incomplete paperwork filed under her desk and in bags on the floor." Dfts' Exhibit B, pp. 48-49. At her deposition, when confronted with the audit results, plaintiff indicated she "can't contest or confirm." *See* Dfts' Exhibit A, p.162. On several occasions, however, plaintiff did acknowledge that she was not meeting her employer's expectations regarding this paperwork. *See, e.g.,* Dfts' Exhibit A, pp. 63, 100, 126, 143; Dfts' Exhibit Q ("I cont. to have ongoing medical issues which have been primary factor with attendance, especially but also with job duties").

On this record, no reasonable jury could conclude that plaintiff is disabled, since her medical condition clearly interfered with her ability to perform this particular job. Nor could a

4

reasonable jury conclude that defendants' explanation for discharging her (i.e., poor attendance and performance) were pretexts for discrimination. Defendants are entitled to summary judgment on this claim.

Plaintiff's second claim, that defendants failed to accommodate her, fares no better. The complaint alleges that defendants denied two requests for accommodation. The first was that her supervisor "schedule patients/clients on plaintiff's side of the building for interviews" in order to reduce the amount of walking she would have to do at work. Amended Complaint ¶¶ 21-22. The second was that she be permitted to arrive at work later, and stay later, because beginning on June 1, 2005, she "was on medicine to improve her flexibility which took a couple of hours to take full effect." *Id.* ¶¶ 23-24.

Under the PWDCRA, an employer is required to "accommodate a person with a disability for purposes of employment . . . unless the person demonstrates that the accommodation would impose an undue hardship." M.C.L. § 37.1102(2). "An employer's duty to make reasonable accommodation does not extend to recreating the position, adjusting or modifying job duties otherwise required by the job description . . . . However, the duty to accommodate does include job restructuring where such restructuring involves only minor or infrequent duties relating to the particular job held by the handicapper." *Pernak v. Ashland, Inc.*, 330 F. Supp.2d 890, 896 (E.D. Mich. 2004) (citations and internal quotations omitted).

As for the first requested accommodation identified in the complaint, plaintiff testified at her deposition that this "wasn't realistic because of me being the only one there frequently." Dfts' Exhibit A, p. 154. A failure-to-accommodate claim cannot be based on an "unrealistic" request. Moreover, plaintiff does not allege that this accommodation, if permitted,

5

would have enabled her to do her job. As is discussed above, plaintiff was discharged for attendance and performance (paperwork) problems, which have no arguable connection with her capacity for walking.

The second requested accommodation might be a closer question, but it too fails because plaintiff, so far as the court can determine based on this record, never presented the request to defendants in writing. The statute is quite clear on this point: "A person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have know that an accommodation was needed." M.C.L. § 37.1210(18). This requirement is enforced literally. *See Petzold v. Borman's, Inc.*, 241 Mich. App. 707, 716 (2000).

Finally, to the extent plaintiff suggests that defendants had a duty to accommodate her by giving her a leave of absence (e.g., to undergo surgery and to heal), the PWDCRA does not require an employer to make such an accommodation. *See Pernak, supra*, 330 F. Supp.2d 890 at 896; *Kerns v. Dura Mech. Components, Inc.*, 242 Mich. App. 1, 16 (2000). The court notes that plaintiff has not asserted a claim in this matter under the Family Medical Leave Act.

For the reasons stated above,

IT IS ORDERED that defendants' motion for summary judgment is granted.

|  |  |
|---|---|
| Dated: November 20, 2006<br>Detroit, Michigan | ____s/Bernard A. Friedman_____<br>BERNARD A. FRIEDMAN<br>CHIEF UNITED STATES DISTRICT JUDGE |

**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____**
**Patricia Foster Hommel**
**Secretary to Chief Judge Friedman**